**Opinion filed August 17, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00041-CV

_____

## IN THE INTEREST OF C.C.C. AND D.D.C., CHILDREN

**On Appeal from the 90th District Court**
**Stephens County, Texas**
**Trial Court Cause No. CV32118A**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order wherein the trial court terminated the parental rights of the father, Appellant.  Because the record does not reflect that Appellant was adequately provided with notice of the final hearing on termination, we reverse and remand.

Appellant's arguments on appeal are two-fold.  Appellant contends that his due process rights were violated because the trial court (1) refused to appoint counsel for him and (2) failed to provide him with notice of the hearing on termination.

On March 15, 2022, the Office of the Attorney General filed a suit for modification of the trial court's order in a suit affecting the parent-child relationship

(SAPCR) based on Appellant's failure to pay child support or medical support. Thirteen days later, Appellee, the mother of C.C.C. and D.D.C., filed an original petition to terminate Appellant's parental rights under the same cause number.

In a hearing on both matters, the trial court heard evidence confirming Appellant's payment arrearages and incarceration; on the support matter, the trial court signed a judgment in favor of the Attorney General's office for such arrearages, payable with interest, and terminated his future support obligations as of the date of the hearing. On the petition to terminate Appellant's parental rights, the trial court heard testimony from Appellee regarding the allegations in her petition and her belief that the termination of Appellant's parental rights would be in the best interest of the children. Following the hearing, the trial court terminated Appellant's parental rights to both children. The trial court severed the termination case into a separate cause number (CV32118A) and signed an order terminating Appellant's parental rights on February 14, 2023. This appeal followed.

In his sole issue on appeal, Appellant presents two arguments in which he alleges that his due process rights were violated in the trial court proceedings that resulted in the termination of his parental rights. In his first sub-issue, Appellant alleges that the trial court erred in failing to appoint legal counsel for him. In his second sub-issue, Appellant asserts that the trial court failed to provide notice of the final hearing date on Appellee's petition to terminate his parental rights. Because it is dispositive of the appeal, we only address Appellant's second sub-issue and conclude that the record is wholly insufficient to demonstrate that proper notice of the termination proceedings was provided to Appellant. As a result, we reverse the trial court's order and remand this cause for a new hearing on Appellee's petition to terminate Appellant's parental rights.

# I. *Procedural History*

## A. *2018 Suit Affecting the Parent Child Relationship*

On February 5, 2018, Appellee filed a SAPCR requesting sole managing conservatorship of C.C.C. and D.D.C. along with temporary orders and a temporary injunction against Appellant. In her petition, Appellee alleged that Appellant engaged in a pattern of family violence for two years preceding the suit. The trial court heard the application for temporary orders on February 15, 2018. Both Appellee and Appellant appeared in person at this hearing, and the trial court named Appellee temporary sole managing conservator, while naming Appellant temporary possessory conservator. Two months later, at the final hearing, the trial court appointed Appellee the permanent sole managing conservator and Appellant possessory conservator of the children. The trial court's order recited that it found that Appellant had entered a general appearance but failed to appear in person at the final hearing.

## B. *2022 Hearing on Support Modification and Termination of Appellant's Parental Rights*

Four years later, on March 15, 2022, the Attorney General's office filed a suit for a modification of the support order with a motion to confirm support arrearage (support modification suit). Thirteen days later, Appellee filed a petition to terminate Appellant's parental rights to C.C.C. and D.D.C. Appellee stated in the petition to terminate that Appellant was entitled to service of citation. However, no return of service is included in the clerk's record.

After Appellee and the Attorney General's office each filed a response, the trial court set a final hearing date of December 8, 2022. The order setting this hearing was filed by the trial court on November 7, 2022, thirty-one days before the hearing was to commence. The order (1) states that an application for hearing "on

the matters presented in the pleading" has been presented to the trial court, (2) provides the hearing date, and (3) requires the parties to furnish information regarding medical insurance and Appellant to furnish financial information to identify his ability to pay child support, as required by Chapter 154—the chapter that exclusively pertains to child support—of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 154.063, 154.181(b), 154.1815(c) (West 2014 & Supp. 2022). The order setting the hearing does not mention that a termination of parental rights proceeding or hearing pursuant to Appellee's separate petition would occur on the date referenced in the order. Rather, the order states that "the application for hearing on the matters presented in the *pleading* (singular) on file in this cause was presented to the Court" and that "[t]he Court sets the above-styled and numbered cause for a hearing" on December 8, 2022 (emphasis added).

On December 21, 2022, the trial court issued an order in the suit for support modification. Appellant, who was incarcerated at the time, wrote to the trial court expressing his confusion about that order, stating that, "[o]nce again I was unable to attend this hearing due to my incarceration, so I do not have a full understanding of what happened." Appellant then filed a letter "motion" to appeal the arrearage payments and motion to request appointed counsel that asked the trial court to provide proof that he was notified of the support "payment increase" from the February 2018 hearing.[1]

---

[1]Appellant claims that as of April of 2018 he had already been incarcerated for eight months. As of the date the district clerk filed his January 27, 2023 letter motions, Appellant indicates awareness, at least by that date, that an order had been issued by the trial court, based on his reference to "the hearing on Dec. 8, 2022." Whether he knew of the December 8 hearing before the date of his letter is not stated. There is no mention in this correspondence of any parental termination proceeding. The trial court's order on parental termination was not issued until February 14, 2023.

On February 14, 2023, in cause number CV32118A (the severed action), the trial court signed an order terminating Appellant's parental rights based on the evidence presented at the December 8, 2022 final hearing, and found that Appellant had committed four of the acts listed in Section 161.001(b)(1) of the Family Code—those found in subsections (C) (E), (F), and (Q). FAM. § 161.001(b).[2] Appellant timely filed a pro se notice of appeal challenging the order of termination.

## II. *Analysis: No Due Process*

Appellant argues that his due process rights were violated when the trial court failed to appoint him counsel and ensure that Appellant had been notified of the December 8 hearing date on Appellee's petition to terminate his parental rights. We need only address Appellant's notice argument because this issue is dispositive of this appeal.

### A. *Lack of Notice of Hearing*

Appellant argues that his due process rights were violated because he did not receive notice of the hearing on Appellee's petition to terminate his parental rights. Appellant argues that Appellee should have been required to present proof that she notified Appellant of the termination of parental rights final hearing date. Appellee contends that that there *is* evidence that notice of this hearing was provided to Appellant, although she concedes that "service was not part of the record."

Generally, it is difficult to prove a negative—for Appellant, that he did not receive the required notice of the order setting the hearing date on the termination

---

[2]We note that the trial court's oral pronouncement only included the findings in Section 161.001(C), (E), and (Q), but the trial court's final order also includes a finding under subsection (F). When there is an inconsistency between the written judgment and an oral pronouncement, the written judgment controls. *In re M.L.S.*, No. 11-12-00042-CV, 2012 WL 2371042, at *1 (Tex. App.—Eastland June 21, 2012, no pet.) (mem. op.).

petition. As a practical matter, when it cannot be presumed that service was provided pursuant to Rule 21a, the appellant, other than to challenge service by disputing receipt of notice, can only reference the trial court's record and point out an absence of a return of service or other written evidence of notice. *See generally* TEX. R. CIV. P. 21a, 99–124. As discussed below, when there is no service pursuant to Rule 21a, there is no presumption that a party was notified of the trial setting. *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005). We have carefully reviewed the record for any evidence relevant to notice. As discussed in detail below, we note the following facts and evidence that are critical to our decision.

1. The Order Setting Hearing for December 8, 2022 was issued by the trial court less than forty-five days before the hearing commenced. On the matter of termination of Appellant's parental rights, no express notice to Appellant of any previous settings of the December 8 hearing is found in the record.

2. No citation, although specifically *requested* in the termination petition, was issued for service of Appellee's petition for termination of parental rights nor does the record contain a sworn return of service.

3. Appellee's petition to terminate Appellant's parental rights does not include a certificate of service[3] and the record contains no evidence, aside from her request for notice, of Appellee's compliance with Rules 21 or 21a.

4. No sworn testimony was presented that confirmed that Appellant received citation, notice, expressly or constructively or that otherwise indicated Appellant's personal knowledge of the termination hearing.

5. At the beginning of the December 8 hearing, when asked by the trial court "about the notice that [Appellant] received," Appellee's attorney in open court responded by discussing a prior hearing on the support modification that was reset, an agreement by Appellee's attorney and the Attorney General's Office that they "set [the] termination at the same time," and that

---

[3]All pleadings required to be served under Rule 21 must contain a certificate of service in the document itself. *See* TEX. R. CIV. P. 21(d), 21a(a).

"that's the notice that was sent out to everybody that it was both."[4] No evidence of notice was offered to support this argument. As a result, we presume that the notice that Appellee's attorney referenced is the Order Setting Hearing for December 8 that the trial court filed on November 7, 2022. Appellee's trial counsel's blanket statement is not evidence that Appellant received notice of the hearing, and there is no evidentiary basis found anywhere in the record that Appellant had received notice. The record is devoid of any evidence supporting the notice contentions of Appellee's trial counsel.

6. Appellant timely filed his pro se notice of appeal in part on procedural grounds and specifically alleged that he had not been afforded due process.

7. Importantly, although the record is devoid of any evidence supporting the notice contentions of Appellee's trial counsel, it is noted in the trial court's termination order and Civil Docket Sheet that Appellant received notice but did not appear at the hearing on December 8. Specifically, the trial court subsequently recited in its order terminating Appellant's parental rights that Appellant had not appeared "although duly and properly cited," and a similar note is found in the Civil Docket Sheet stating, "Resp notified but did not appear." But, as a practical matter, it was known by the parties that Appellant was incarcerated, and it was known by the trial court that the trial court had not appointed an attorney to represent him in the termination matter, and that it had not issued a bench warrant nor had other arrangements been made for Appellant to participate in the termination hearing (telephonic, Zoom, Skype, FaceTime or other electronic means). In other words, regardless of the recitation in the trial court's order that Appellant did in fact receive notice, there is no evidence in the record to support this finding, which, as a practical matter, may be due in part to his incarceration and pro se status.

---

[4]Specifically, Appellee's trial counsel stated, "Judge, this was a hearing that was set -- and Ms. Le is right -- I think on the prior hearing. I don't remember why it was, but for some reason we weren't able to do it. We were going to reset that hearing. She asked if we wanted to go ahead and set our termination at the same time, and we did, and so that's the notice that was sent out to everybody that it was both. And if the court is ready."

B. *Termination of Parental Rights Proceedings Generally*

The essence of due process demands that a person at risk of serious loss be given notice of the case against him and the opportunity to meet it. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The trial of a parental termination case is a critical stage of litigation. *In re J.M.O.*, 459 S.W.3d 90, 94 (Tex. App.—San Antonio 2014, no pet.). "Failure to give a parent notice of pending proceedings 'violates the most rudimentary demands of due process of law.'" *In re K.M.L.*, 443 S.W.3d 101, 119 (Tex. 2014) (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988)). Notice may be either actual or constructive, as long as it is reasonably calculated under the circumstances to apprise the party of the pendency of the action and to provide an opportunity to present objections. *Id.*; *see Peralta*, 485 U.S. at 84.

Except as otherwise provided by Title 5, the procedure for contested hearings in SAPCRs "shall be as in civil cases generally." FAM. § 105.003 (West 2019); *see also* FAM. § 101.032 (termination is a type of SAPCR). Accordingly, we look to Rule 21(b) of the Texas Rules of Civil Procedure to determine whether Appellant received proper notice of the hearing. *See* TEX. R. CIV. P. 21(b). Rule 21(b) provides that "notice of any court proceeding . . . must be served upon all other parties not less than three days before the time specified for the court proceeding." Although notice may be actual or constructive, notice sent pursuant to Rule 21a permits the court to presume that notice was received. *Id.* R. 21a(e); *Mathis*, 166 S.W.3d at 745. However, "[when notice] is challenged, it must be proved according to the rule." *Mathis*, 166 S.W.3d at 745.

To overcome this presumption, a party challenging a trial court's judgment for lack of notice has the burden of proving that notice was not provided. *Hanners v. State Bar of Tex.*, 860 S.W.2d 903, 908 (Tex. App.—Dallas 1993, no writ). "The

8

law presumes that a trial court hears a case only after proper notice to the parties." *Hanners*, 860 S.W.2d at 908. But this presumption cannot be raised when service cannot be proved. *Mathis*, 166 S.W. 3d. at 745; *In re A.J.M.*, No. 11-20-00222-CV, 2021 WL 3923300, at *5 (Tex. App.—Eastland Sept. 2, 2021, no pet.) (mem. op.). We look to *Mathis*, where, as here, the record was devoid of evidence that Appellant had been properly served notice pursuant to Rule 21a. *Mathis*, 166 S.W.3d at 745; *In re K.M.L.*, 443 S.W.3d at 119.

Without the presumption, a party alleging lack of notice does not initially bear the burden of proof. *Mathis*, 166 S.W.3d at 745. In *Mathis*, appellant Mary Mathis sought to set aside a post-answer default judgment rendered against her. *Id.* at 743. Mathis testified at the post-trial hearing that she did not receive notice of the trial date. *Id.* at 744. The trial court disregarded her testimony and instead relied on an uncertified letter sent to Mathis regarding the trial date. *Mathis v. Lockwood*, 132 S.W.3d 629, 632 (Tex. App.—Dallas 2004), *pet. granted, judgm't rev'd*, 166 S.W.3d 743 (Tex. 2005). The court of appeals stated that "Mathis failed to overcome the presumption that she was notified of the trial setting." *Id.* However, the supreme court reversed, finding that there was no service pursuant to Rule 21a; therefore, there was no presumption that she was notified of the trial setting. *Mathis*, 166 S.W.3d at 745.

C. *No evidence Notice of the Hearing on the Termination Petition*

Relevant to Appellant's contention that he did not receive notice of the *hearing* is the fact that there is no evidence in the record that Appellee's parental-rights-termination *petition* was ever served on Appellant by means of proper

citation[5] or sent to him in fulfillment of the certificate of service requirement under Rule 21 or 21a. Even if Appellant had received the order setting the December 8 hearing, that order as drafted gives no indication that the hearing would also include a hearing on Appellee's petition to terminate Appellant's parental rights. Rather, it appears to pertain, on its face, only to the child support modification "pleading," a singularly filed pleading by the Attorney General. Compounded with the fact that there is no record of citation having been served upon Appellant or notice of the termination petition itself, any receipt of this notice of hearing, as drafted, would not be reasonably calculated under the circumstances to apprise Appellant of the pendency of the termination-of-parental-rights action and to provide him an opportunity to present evidence in response thereto. *See Peralta*, 485 U.S. at 84. To be clear, there is no evidence in the record that the trial court's November 11, 2022 order setting the December 8 final hearing date was ever received by Appellant.

D. *The Attorney's Unsworn Assertion of Notice to Appellant is not Evidence*

All pleadings are required to be served under Rule 21 and must contain a certificate of service in the document itself. *See* TEX. R. CIV. P. 21(d), 21a(a). The certificate of service should contain the recipient's physical address, e-mail address, and a statement that the document was served, if applicable, on a pro se party. *See*

---

[5]Thirteen days after the Texas Attorney General's office filed its suit to modify child support payments, Appellee filed a "petition" to terminate the parental rights of Appellant, who was incarcerated at the time. Appellee's petition is filed with the trial court without a certificate of service attached. It is drafted as if it is a new lawsuit but it is not given a separate cause number. In the petition's prayer, Appellee states "Petitioner prays that citation and notice issue as required by law." Citation is formal service of a petition upon a defendant with proof of service returned to the clerk required. TEX. R. CIV. P. 99(a). Section five of the Texas Rules of Civil Procedure is entitled "Citation" and contains rules 99–124. Thus, service of citation is different from mere notice, and we should be loath to confuse the two. *See Perez v. Perez*, 59 Tex. 322, 324 (1883) ("The words *citation* and *notice* are by no means synonymous. . . . A notice is much less formal."). Indeed, "service of citation" is a term of art that describes the formal process by which a party is informed that it has been sued. *Tex. Nat. Res. Conservation Comm'n v. Sierra Club*, 70 S.W.3d 809, 813 (Tex. 2002).

TEX. R. CIV. P. 21a(a), (b), (e).  It should also identify the method of service.  *See, e.g.*, *Dunn v. Menassen*, 913 S.W.2d 621, 626 (Tex. App.—Corpus Christi–Edinburg 1995, writ denied).

Here, the order setting the hearing does not contain a certificate of service or any other indication that it was served on Appellant.  In the absence of a certificate of service or some other competent evidence of service, a court cannot presume that notice was received.  *See Mathis*, 166 S.W.3d at 745.  With regard to a record that is devoid of formal notice, as it is in this case, even where a trial court has relied on a party's attorney's assertion that notice has been given, the Texas Supreme Court has been clear:

> Unlike service of citation, Rule 21a allows service of notices by anyone competent to testify.  When a party or attorney of record serves the notice (as occurred here), [t]he party or attorney of record shall certify to the court compliance with this rule in writing over signature and *on the filed instrument*.  Like any other contemporaneous business record, this certificate bears some assurance of trustworthiness as it was prepared as a matter of office routine before any dispute about notice arose.
>
> A certificate by a party or an attorney of record, or the return of the officer, or the affidavit of any person showing service of a notice shall be prima facie evidence of the fact of service.  Here, the record contains no certificate of service, no return receipt from certified or registered mail, and no affidavit certifying service.  *Instead, the only evidence of service in the record was the oral assurance of counsel*.  As the rule's requirements are neither vague nor onerous, we decline to expand them this far.  As none of the prerequisites for prima facie proof of service were met, the court of appeals was incorrect in indulging a presumption that Mathis received the notice Lockwood's counsel sent.

*Mathis*, 166 S.W.3d at 745 (second emphasis added) (internal quotations and citations omitted).  The presumption of service is inapplicable in this case because there is no evidence in the record, let alone prima facie evidence, of service "of a

notice" to Appellant. *See Mathis*, 166 S.W.3d at 744–45 (reversing the denial of a motion for new trial in part because the record contained no evidence of service beyond the oral assurances of counsel).

E. *The Record in Support of Notice is Barren, so the Burden Falls Upon Appellee*

In light of the above, we hold that the denial of procedural due process in this case "probably prevented [Appellant] from properly presenting the case" on appeal. *See* TEX. R. APP. P. 44.1(a)(2); *see also In re T.L.B.*, No. 07-07-0349-CV, 2008 WL 5245905, at *5 (Tex. App.—Amarillo Dec. 17, 2008, no pet.) (mem. op.) (holding, in a termination-of-parental-rights case, that the trial court's denial of the father's meaningful participation in trial violated his due-process rights and probably prevented him from properly presenting his case on appeal). In his pro se "Notice of Appeal" filed March 7, 2023, Appellant specifically alleges a lack of "due process" as a basis for his appeal. Here, Appellant's claim on appeal of an absence of the hearing notice combined with the record's absence of direct evidence of the delivery of notice regarding the December 8 hearing, satisfies Appellant's burden of production. Where no presumption of service exists, the absence of any controverting evidence also compels a finding that no notice was given. *See In re K.M.L.*, 443 S.W.3d at 119.

Appellee's response appears to imply that the Attorney General's answer, sent to Appellant, would have advised Appellant and put him on notice of Appellee's parental-rights-termination petition and accompanying legal proceeding. Attached to the Attorney General's answer is a certificate of service representing that service was had upon the parties, though it does not mention what method of service the Attorney General used. This certificate of service lists Appellant and his address in federal prison. This is the only document for which we may presume that service

12

was issued to and received by Appellant, but the answer filed does not refer to which proceeding it is responding to, nor does it mention any termination petition filed against Appellant. Even if we were to presume that by the Attorney General's benign answer that Appellant was at least aware of a termination proceeding, there is nothing in that document to advise Appellant of the December 8 hearing. Without that critical information, we cannot conclude that Appellant was given a meaningful opportunity to voice his objections in an appropriate manner at the December 8 hearing. Due process violations have occurred in cases where a parent was aware of the termination proceeding generally but did not have notice of the hearing date. *See In re K.M.L.*, 443 S.W.3d at 119; *In re L.G.T.*, No. 05-17-00140-CV, 2017 WL 2729958 at *3 (Tex. App.—Dallas June 26, 2017, no pet.) (mem. op.). Similarly, we cannot say in this matter that Appellant received notice of the December 8 hearing.

There is some evidence that the trial court sent notice. The bill of costs in the clerk's record includes the items "e-filing fee," "issuing citation," "citation fee," and "notice of hearing." But when, to whom, by what means, and whether service or notice was successful is, of course, not stated.

Appellee also argues that because the trial court took judicial notice of the clerk's file, service may be presumed. "The mere presence of the notice *in the court's file* is not evidence that it was mailed, much less received." *Ashworth v. Brzoska*, 274 S.W.3d 324, 330–31 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (emphasis in original). Receipt of notice can be of particular importance when incarcerated parties are involved because they require an intermediary to receive and distribute their mail. *See In re L.G.T.*, 2017 WL 2729958, at *4 (a letter directed to the prison, ordering an inmate to trial was not evidence that the inmate received notice of the trial setting).

13

F. *The Pro-Se Record Does Not Demonstrate Notice*

Appellant did not stipulate to receiving notice in his pro se response to the order to modify child support. Appellant's letter began, "I recently received an order to modify my payments [and] arrearages. Once again[,] I was unable to attend this hearing due to my incarceration, so I do not have a full understanding of what happened." The phrase "once again" may suggest that Appellant was aware that he had missed previous hearings due to his incarceration—and also *possibly* be aware that he missed the December 8 hearing, but we must only speculate to so conclude. More directly, Appellant's response indicates that he did receive the order *after* the hearing, despite no certificates in the record indicating such. However, an admission that he received the order in the modification suit is not evidence that he received notice of the December 8 hearing.

Importantly, Appellant's letter suggests that he was unaware of the scope of any noticed hearing. Even if we assume that Appellant received the order setting the December 8 hearing, the order recites that the hearing will be "on the relief requested in the pleading served herewith." The setting order does not mention that Appellee's request to terminate Appellant's parental rights will also proceed on that date. The record does not show what pleadings, if any, were attached—and the order itself states only that one pleading was attached. The trial court heard two motions at the December 8 hearing—one to modify payment and arrearages, and the other to terminate Appellant's parental rights. Although the trial court made an oral ruling on both matters at the hearing, the trial court's signed order to terminate Appellant's parental rights did not issue until *after* Appellant contacted the court in writing the first time. At best, Appellant's letter is ambiguous—one that does not state that he was aware of the dual purposes of the December 8 hearing. We disregard stipulations to notice that are not unambiguous. *Ashworth*, 274 S.W.3d at 329–30.

14

Notice is a fundamental requirement, and in a case involving the termination of one's parental rights, the total and irrevocable dissolution of the parent-child relationship can be said to constitute the "death penalty" of civil cases. *In re K.M.L.*, 443 S.W.3d at 121 (Lehrmann, J., concurring). Because of the gravity and constitutional importance of the parent-child relationship, termination proceedings must be strictly scrutinized. *Id.* at 112. After a careful review of the record, there is no evidence in the record that Appellant received notice of the hearing to terminate his parental rights. Critically, there is no evidence to controvert this lack of notice. Therefore, we sustain Appellant's second sub-issue.[6] Because this holding necessarily disposes of this appeal, we decline to address Appellant's first sub-issue. *See* TEX. R. APP. P. 47.1.

### III. *This Court's Ruling*

We reverse the trial court's order terminating Appellant's parental rights and remand this cause to the trial court for further proceedings consistent with this opinion. Any proceeding on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4(c).

W. BRUCE WILLIAMS
JUSTICE

August 17, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[6]This opinion does not address, nor do we express an opinion on, the merits of Appellee's parental termination allegations; rather, we only address whether procedural due process was afforded to Appellant in the termination of parental-rights proceeding.